# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEVEN HUDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 05 C 5623 |
| vs. ) | |
| ) | Magistrate Judge Schenkier |
| JAMES CASSIDY, WAYNE BUNCH, ) | |
| and the CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff, Steven Hudson, has filed a five-count complaint alleging various violations pursuant to 42 U.S.C. § 1983. Mr. Hudson's complaint asserts: (a) a claim against James Cassidy and Wayne Bunch alleging that they violated his due process rights by coercing him into giving a false confession by using excessive force, and by failing to disclose that they had used coercion to extract his confession (Count I); (b) a claim against Messrs. Cassidy and Bunch alleging false arrest (Count II); (c) a claim against Messrs. Cassidy and Bunch alleging excessive force (Count III); and (d) a claim asserting direct liability against the City of Chicago under the *Monell* doctrine (Count IV). Mr. Hudson also alleges a state law claim for indemnity against the City of Chicago, pursuant to 745 ILCS 10/9-102 (Count V).

Since filing the complaint, Mr. Hudson has voluntarily dismissed Count IV (doc. # 13). Defendants now seek to dismiss all remaining claims pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc. # 25). For the reasons that follow, we grant defendants' motion to dismiss.

---

[1] On June 5, 2006, the Executive Committee transferred this case to this Court for all proceedings, including the entry of final judgment, pursuant to full consent of the parties and 28 U.S.C. § 636(c) (doc. #19).

## I.

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide its merits. *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court accepts all well-pled allegations as true and draws all reasonable inferences in the light most favorable to the moving party. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999). Turning to the complaint, the relevant allegations, which we take as true solely for the purposes of this motion, are as follows.

On September 13, 1998, Jermaine Collins was shot and killed (Complaint, ¶ 20). The sole eyewitness to the shooting told Messrs. Cassidy and Bunch, who were detectives with the Chicago Police Department, that he saw four men shoot Jermaine Collins (*Id.*, ¶ 21). The witness did not indicate that Mr. Hudson was one of those men (*Id.*)

On November 5, 1998, Mr. Hudson was arrested for possession of a bag of marijuana (Complaint ¶ 23). During this arrest, Mr. Bunch interrogated Mr. Hudson about the Collins killing. (*Id.*, ¶ 24). When Mr. Hudson failed to confess to the murder, Mr. Bunch put his thumbs in plaintiff's eyes (*Id.*, ¶ 25). Mr. Bunch then used a device to electrocute and shock Mr. Hudson in the area from Mr. Hudson's abdomen to the tip of his penis (*Id.*, ¶ 26). Later, Mr. Cassidy interrogated plaintiff, and when plaintiff still refused to confess, Mr. Cassidy punched and kicked plaintiff in the abdomen area (*Id.*, ¶ 30). Mr. Cassidy then threatened to charge Mr. Hudson's girlfriend with the murder, and to take away plaintiff's son if he did not confess (*Id.*, ¶ 31).

Plaintiff finally agreed to confess, and Mr. Cassidy told him what to say in the confession (Complaint, ¶ 32). An Assistant State's Attorney took Mr. Hudson's statement, with Mr. Cassidy present (*Id.*, ¶ 34). When Mr. Cassidy left the room, Mr. Hudson attempted to tell the Assistant

State's Attorney that his confession was coerced (*Id.*). Mr. Cassidy re-entered the room, and while the Assistant State's Attorney was absent, Mr. Cassidy warned Mr. Hudson not to complicate things or his girlfriend would be arrested and his child taken away (*Id.*). The Assistant State's Attorney then returned, and Mr. Hudson continued giving his confession (*Id.*).

Based on that confession, on November 8, 1998, Mr. Hudson was charged with murder at a probable cause to detain and bail hearing (Complaint, ¶ 35; Defendants' Reply, Exh. B).[2] That charge was superceded by indictment on December 1, 1998 (Defendants' Reply, Exh. B), and was reassigned to the Criminal Division under a new case number on December 8, 1998 (Defendants' Reply, Exh. C). On August 25, 1999, Mr. Hudson's defense attorney filed a motion to suppress plaintiff's confession, and the suppression hearing commenced on January 7, 2000 (Complaint, ¶ 37; Defendants' Reply, Exhs. C and D). Testimony on the motion was heard over several dates from January 7, 2000 to June 7, 2001 (Defendants' Reply, Exhs., E-J). On August 13, 2001, the trial judge granted the motion to suppress Mr. Hudson's confession, and ordered the release of Mr. Hudson on an Individual Bond (Complaint, ¶ 38; Defendants' Reply, Exh, K). Mr. Hudson apparently was unable to make bond, however, and thus remained in custody (Complaint, ¶ 36).

The State's motion to reconsider the trial court's ruling suppressing the statements was denied on December 5, 2001 (Defendants' Reply, Exh. C). On January 16, 2002, the State filed its appeal of the ruling (*Id.*). On April 9, 2003, the appeal was dismissed on Mr. Hudson's motion (*Id.*). The State had 21 days, or until April 30, 2003, to seek leave to appeal this dismissal to the Illinois

---

[2] Defendants attached to their reply brief the public records providing notice of the dates of each relevant proceeding in Mr. Hudson's criminal case. When resolving a motion to dismiss, the Court is entitled to take judicial notice of matters in the public record without converting the motion into one for summary judgment. *Palay v. United States*, 349 F.3d 418, 425, n.5 (7th Cir. 2003); *G.E. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997).

Supreme Court. *See* Ill.S.Ct. Rule 604(a)(2) (a petition by the State for leave to appeal is governed by Illinois Supreme Court Rule 315(a)); Ill. S.Ct. Rule 315(a), (b) (a petition for leave to appeal must be filed – absent exceptions not relevant here – within 21 days after entry of the judgment of the appellate court). The State did not seek leave to appeal the appellate court's dismissal order.

Thereafter, on May 7, 2003, Mr. Hudson was released on an I-Bond (Defendants' Reply, Exh. C). By that time, Mr. Hudson had spent 54 months in custody (Complaint, ¶ 36). No other evidence was discovered to support the murder charge against Mr. Hudson, and on October 1, 2003, prosecutors *nolle prosequied* the charges (Complaint, ¶ 40). Thereafter, on September 29, 2005, plaintiff filed this lawsuit.

## II.

Defendants move to dismiss Count I on the grounds that it fails to state a claim and, in any event, is time-barred. Defendants move to dismiss Counts II and III (the false arrest and excessive force claims) as time-barred. Finally, defendants assert that since all counts against Messrs. Cassidy and Bunch should be dismissed, Count V (the indemnity claim against the City under Illinois law) should also be dismissed.

Because the statute of limitations is an affirmative defense, dismissal under Rule 12(b)(6) on these grounds is only appropriate if the allegations in the complaint show that a cause of action is time-barred. *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003); *see also Foryoh v. Hannah-Porter*, 428 F. Supp.2d 816, 819-20 (N.D. Ill. 2006). Therefore, the question before us is whether plaintiff's complaint contains allegations showing that his claims for false confession (Count I), false arrest (Count II), and excessive force (Count III) are barred by the applicable two-year statute of limitations. For the reasons that follow, we conclude that it does.

4

## III.

Section 1983 does not contain an express statute of limitations. In its absence, we adopt the forum state's (Illinois's) statute of limitations for personal injury actions, which is two years. *Ashafa v. City of Chicago*, 146 F.3d 459, 462 (7th Cir. 1998). Neither party disputes that the two-year statute of limitations governs the Section 1983 claims alleged in the complaint.

However, the parties dispute when those claims accrued for purposes of determining when the two-year statute of limitations period commenced. While state law governs the applicable statute of limitations, federal law determines the accrual of Section 1983 claims for constitutional torts. *Gonzalez v. Entress*, 133 F.3d 551, 554 (7th Cir. 1998). Our consideration of when Mr. Hudson's Section 1983 claims accrued is governed by the Seventh Circuit's recent decision in *Wallace v. City of Chicago*, 440 F.3d 421 (7th Cir. 2006), *cert granted*, 126 S.Ct. 2891 (2006). As neither party has requested a stay of proceedings pending the Supreme Court's decision in *Wallace*, we begin our analysis with a discussion on the Seventh Circuit's ruling in Wallace.

### A.

In *Wallace*, the Seventh Circuit reaffirmed its holding in *Booker v. Ward*, 94 F.3d 1052, 1056-57 (7th Cir. 1996), that false arrest claims accrue at the time of the arrest. *Wallace*, 440 F.3d at 427. In so holding, the Seventh Circuit overturned its intervening ruling in *Gauger v. Hendle*, 349 F.3d 354, 361-62 (7th Cir. 2003), which held that the accrual date for false arrest claims under Section 1983 depended on how central the evidence obtained from a constitutional violation was to the state criminal prosecution. *Wallace*, 440 F.3d at 427.

In adopting a case-by-case approach, the *Gauger* panel had relied on *Heck v. Humphrey*, 512 U.S. 477 (1994), in which the Supreme Court held that a constitutional claim cannot be brought until

5

after the conviction is nullified if a successful constitutional claim would undermine the conviction. *Gauger*, 349 F.3d at 360. The essence of *Gauger's* reading of *Heck* was that if the constitutional claim may conflict with the criminal claim – by prejudicing the criminal defendant or the prosecution and producing inconsistent rulings – it should not be brought until the alleged constitutional harm is no longer at issue in the case. *Gauger*, 349 F.3d at 360-62.

In *Wallace*, the Seventh Circuit returned to the proposition – earlier explained in *Booker* – that wrongful arrests and other constitutional torts do not "inevitably undermine a conviction; one can have a successful wrongful arrest claim and still have a perfectly valid conviction." *Wallace*, 440 F.3d at 426 (quoting *Booker*, 94 F.3d at 1056). The *Wallace* court explained that state criminal prosecutions may continue even if arrests are deemed by the state court to be unlawful, and that subsequent decisions to abandon the criminal cases based on "the pragmatic judgment of the prosecutors" may be for various reasons: "a conclusion that it was unlikely that any additional evidence existed, or on a lack of resources for further investigation, or any of a number of other factors." *Id.* at 427. The court viewed this consideration as a factor that "argues against" the *Gauger* approach, which "requires judges several years after the event to decide whether a particular Fourth Amendment challenge would have been the death knell of the prosecution." *Id.*

After rejecting the *Gauger* case-by-case approach, *Wallace* chose an approach under which constitutional tort claims "accrue at the time of injury" rather than an approach "that they all accrue only after the criminal conviction has been set aside." *Wallace*, 440 F.3d at 427. The *Wallace* court explained that while this approach was "an arguable extension" of *Heck*, such an extension was "justifiable in light of the policies behind both the statute of limitations and the need to avoid unnecessary interference with the outcomes of criminal proceedings." *Id.*

The Seventh Circuit thus instructed that those "who wish to preserve a claim for false arrest or similar Fourth Amendment violation should file their civil rights actions at the time of arrest." *Wallace*, 440 F.3d at 427. The court explained that any concern that proceeding with such an action could imply the invalidity of a state's conviction in a pending criminal prosecution could be addressed by the district court's continued discretion to stay the federal action until the state criminal proceeding is concluded. *Id.*

The *Wallace* court also identified two qualifications to this rule governing the accrual of claims. *First*, the appeals court explained that its decision addressed only the date on which constitutional claims accrue for purposes of the statute of limitations, and not whether the applicable limitations period may be affected by other doctrines, such as equitable tolling. *Wallace*, 440 F.3d at 427. *Second*, the *Wallace* court explained that the accrual rule it announced applies to the normal run of cases and not to the "relatively uncommon set of cases" where "there is independent reason to insist that a plaintiff wait to sue until the criminal conviction has been set aside." *Id.* at 428. The sole example the *Wallace* court provided of such a situation is where a plaintiff, convicted of resisting arrest, challenges the legality of the arrest. *Id.*

Although Mr. Hudson filed his complaint prior to the ruling in *Wallace*, the rule announced in that case for accrual of constitutional tort claims applies here. *Orange v. Burge*, 451 F.Supp.2d 957, 961 (N.D. Ill. 2006) (applying *Wallace* to claims filed before the decision in *Wallace*). However, irrespective of whether the *Wallace* or the *Gauges* approach governs accrual of claims, Mr. Hudson's federal claims must be dismissed.

7

## B.

We begin with the excessive force claim (Count III). Mr. Hudson alleges that he was subjected to excessive force on November 5, 1998 (Complaint, ¶¶ 25-26, 30). He filed the complaint in this case on September 29, 2005. Mr. Hudson claims that the complaint was timely, because under *Heck*, his excessive force claims did not accrue until October 1, 2003 – the date the state criminal charges were dropped (Complaint ¶ 40). We disagree. Under either the *Wallace* or *Gauger* accrual rule, the excessive force claim is time-barred.

The use of excessive force at a police station is immediately felt, and thus "is immediately actionable, even if the prosecutor never tries to use the [resulting] confession at trial." *Gonzalez v. Entress*, 133 F.3d 551, 555 (7th Cir. 1998). There is nothing about Mr. Hudson's claim of excessive force that would imply the invalidity of the criminal charges against him; even if excessive force were used, and even if that use of force resulted in suppression of a confession, there may be other evidence that would support a conviction. Thus, we conclude that Mr. Hudson's excessive force claim is within the "normal run" of claims to which the *Wallace* accrual rule applies. *See also Orange*, 451 F.Supp.2d at 963 (applying *Wallace* to conclude that excessive force claim was time barred).

Under *Wallace*, Mr. Hudson had two years from November 5, 1998 in which to file his excessive force claim. He failed to do so, and he has offered no basis for that two-year limitations period to be equitably tolled. Thus, under *Wallace*, Mr. Hudson's excessive force claim is time-barred.

Moreover, assuming the *Gauger* approach to claim accrual applied, Mr. Hudson's excessive force claim still would be time-barred. Under *Gauger*, the accrual date of the claim would be

8

April 30, 2003, the last date on which the State could seek leave to appeal the suppression ruling. As of that date, Mr. Hudson could no longer argue that his constitutional claims would impugn the validity of his potential conviction, because the confession allegedly resulting from the excessive force no longer could be part of the prosecution. But, plaintiff did not file his complaint in this case until September 29, 2005, more than two years after April 30, 2003. Therefore, because plaintiff did not file within the two-year statute of limitations under either a *Wallace* or *Gauger* accrual rule, the claim is time-barred and must be dismissed.

## C.

We turn next to Mr. Hudson's false arrest claim (Count II). Plaintiff asserts that even in light of *Wallace*, his claim for false arrest did not accrue until he was released from custody because he falls within the exception carved out in *Wallace* for constitutional claims that necessarily imply the invalidity of a potential conviction. *Wallace*, 440 F.3d at 428. Mr. Hudson claims that this is the case because without the false arrest, there would not have been the false confession that formed the basis of the murder charges against him.

We disagree. This is not a case where Mr. Hudson's false arrest claim would implicate an element of his criminal prosecution for murder. Indeed, Mr. Hudson's *Heck* argument is indistinguishable from the false arrest argument raised by the *Wallace* plaintiff. That argument failed to carry the day in *Wallace*, and it is equally unavailing here. Therefore, *Wallace*'s accrual rule controls Mr. Hudson's claim for false arrest. Because plaintiff's claim accrued on November 5, 1998 and he did not file his action until September 29, 2005, the false arrest claim is time-barred.[3]

---

[3]Moreover, as with the excessive force claim, the false arrest claim also would be barred under *Gauger*: that claim would have accrued under *Gauger* by April 30, 2003, more than two years before suit.

**D.**

In Count I, Mr. Hudson asserts a claim for false confession. Plaintiff claims that defendants deprived him of procedural due process by: (1) physically and psychologically coercing him into giving a false confession; and (2) failing to disclose to the prosecutor and court that they coerced him into giving a false confession. Plaintiff further contends that the physical and psychological force used by the defendants raises a substantive due process claim, and that *Wallace* leaves open the question of whether the clear accrual rule applies to substantive due process claims. Plaintiff also asserts a fifth amendment claim based on a violation of the self-incrimination clause. We conclude that each of these variations on the wrongful confession claim is time-barred.

**1.**

We first address plaintiff's procedural due process claim. To the extent that the claim is premised on physical and psychological coercion resulting in a false confession, we find that the analysis that governs the date of accrual for excessive force claims governs here as well. As we discussed above, under the *Wallace* analysis, the date of accrual would be the time that the force was applied – November 5, 1998. Under *Gauger*, the date of accrual would be April 30, 2003, the date that the alleged confession resulting from that application of force was irretrievably removed from the case when the State no longer could appeal the suppression order. In either event, a procedural due process claim based on the application of force to obtain the confession is time-barred, because this suit was filed more than two years after the accrual date under either *Wallace* or *Gauger*.

Insofar as the procedural due process claim is premised on the assertion that the officers failed to reveal to the prosecutor and the court that they coerced Mr. Hudson's confession, such a claim not only is untimely even under *Gauger* (the claim would have accrued by April 30, 2003 at

10

the latest), but it also fails on the merits. In *Gauger*, the Seventh Circuit rejected a similar argument. In that case, the plaintiff asserted that *Brady v. Maryland*, 373 U.S. 83 (1963), "required the detectives to give truthful versions of Gauger's statements at the interrogation to the prosecutors to be forwarded to his counsel at his criminal trial." *Gauger*, 349 F.3d at 360. The appeals court flatly rejected this proposed application of *Brady*, explaining that there was no violation of a duty to disclose under *Brady* "because Gauger knew what he had said at the interrogation." *Id. Wallace* did not disturb this portion of the ruling in *Gauger*. Accordingly, we conclude that this prong of Mr. Hudson's procedural due process/false confession theory fails to state a claim.

### 2.

Mr. Hudson also asserts that his substantive due process rights were violated by the defendant officers obtaining a false confession through physical and psychological force. It is true that a substantive due process claim may lie where a plaintiff alleges government action that involves an abuse of power that "shock[s] the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). In *Wallace*, the Seventh Circuit made reference to this proposition when stating that, while there is no "free-standing due process claim whenever unfair interrogation tactics . . . are used to obtain a confession," an exception lies where the tactics "may shock the conscience and thereby implicate the Supreme Court's substantive due process rulings." *Wallace*, 440 F.3d at 429.

While Mr. Hudson's allegations (which we take as true for purposes of this motion) would survive a motion to dismiss under the "shock the conscience" standard, they do not save the substantive due process claim from dismissal on the basis of the statute of limitations. We see nothing in *Wallace* that creates a different test for accrual of substantive due process claims than that used for other constitutional violations. Under *Wallace*, Mr. Hudson's substantive due process claim

11

accrued on November 5, 1998, when the excessive force was applied. We reiterate that under *Gonzalez*, 133 F.3d at 555, that is true irrespective of whether the State ever used the confession that allegedly resulted from the excessive force. Moreover, as we have explained above, under the *Gauger* standard, plaintiff's substantive due process claim would have accrued, at the latest, on April 30, 2003, at which time the State no longer could attempt to make any use of that confession. Under either standard, this lawsuit was filed more than two years after the accrual of the substantive due process cause of action and, accordingly, is time-barred.

### 3.

Finally, Mr. Hudson asserts that his false confession claims survive based on an alleged violation of his fifth amendment right against self incrimination. Mr. Hudson bases this claim on an extension of *Sorenberger v. City of Knoxville*, 434 F.3d 1006, 1026-27 (7th Cir. 2006), in which the Seventh Circuit found that a plaintiff could seek damages under Section 1983 when his confession was obtained without the required *Miranda* warnings and is subsequently used against him in a criminal case. Mr. Hudson argues that the improper use of a coerced confession is entitled to no less protection than the use of a confession obtained in violation of *Miranda*, and therefore should qualify for the same Section 1983 damages remedy.

We do not reach the question of whether this theory states a claim, or whether it is – as defendants claim – a claim that plaintiff improperly seeks to add to the complaint by way of his response to the motion to dismiss, because any such claim would be time-barred. Plaintiff was on notice as early as January 2000, when the suppression hearing commenced, that the State sought to use the confession (which Mr. Hudson says was illegally coerced) against him in the criminal proceeding. Thus, any fifth amendment claim resulting from an attempt to use that confession

accrued as early as January 2000. This suit was filed nearly six years after that date, on September 29, 2005. Moreover, even assuming that the claim did not accrue until April 30, 2003, when the State was conclusively foreclosed from using the confession, plaintiff's claim is still too late, as it was still filed more than two years after the date of accrual. Accordingly, we conclude that this variation of plaintiff's false confession claim is time-barred.

## IV.

The sole basis of the City's alleged liability is based on statutory indemnification under the Illinois Tort Immunity Act, 745 ILCS 10/9-102 (2004), which requires that there be a viable claim against the individual defendants for a claim to lie against the City. Since there is no viable claim against defendants Cassidy and Bunch, the indemnity claim against the City must be dismissed as well.

## CONCLUSION

For the above-stated reasons, defendants' motion to dismiss (doc. #25) is granted. The Clerk of the Court is directed to enter a final judgment for defendants, pursuant to Fed R. Civ. P. 58, and to terminate this case.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: December 5, 2006